IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA LUKE RUSHING,

    Plaintiff,

v.                                    1:25-cv-00489-KG-SCY

CITY OF ALBUQUERQUE
AND LILLIAN BYRES-RICHARDSON,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants City of Albuquerque and Lillian Byres-Richardson's Motion to Dismiss, Doc. 15, and Plaintiff Joshua Rushing's Motion for Leave to File a Surreply, Doc. 25. Because Mr. Rushing's motion is unopposed, the Court grants the motion and considers the surreply. For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss, Doc. 15. Mr. Rushing's (A) First Amendment claim survives, (B) class-of-one Equal Protection claim is dismissed without prejudice, and (C) spousal discrimination claim under the New Mexico Human Rights Act ("NMHRA") survives.

## I.    *Background*

The Court recounts this case's background using the pleadings, drawing all reasonable inferences in the nonmoving party's favor and describing only those facts relevant to Defendants' motion to dismiss. *E.g.*, *WildEarth Guardians v. U.S. Forest Serv.*, 2025 WL 2430383, at *1 (D.N.M.).

During the relevant period, Mr. Rushing routinely conducted "reading, research, and work" as a patron at the Taylor Ranch Branch of Albuquerque's public library system. *Id.* at 3–4. His spouse, Claire Laidlaw, worked at the branch. Doc. 1 at 3. When Mr. Rushing visited the

1

branch, he acted like "an average patron": he did not interrupt Ms. Laidlaw's work, "enter employee areas," "use employee services," or "use employee facilities." *Id.* He complied with the library's posted policies and was never "asked to change his behavior." *Id.* Other employees "regularly had family members, spouses, and/or significant others visit them at work, at times going behind the desk." *Id.* at 5.

Nonetheless, the Taylor Ranch Branch manager, Defendant Lillian Byres-Richardson, asked Ms. Laidlaw to limit Mr. Rushing's "presence" at the library during Ms. Laidlaw's working hours. *Id.* Ms. Byres-Richardson attributed the request to "distractions to other employees," but did not cite specific complaints. *Id.* The "request was not based on any established policy." *Id.* Mr. Rushing believed it was "made in error" and continued using the Taylor Ranch Branch "in accordance with all posted rules and guidelines." *Id.*

Ms. Byres-Richardson met with Ms. Laidlaw for a second time approximately one month later. *Id.* at 6. Ms. Byres-Richardson "threatened adverse employment action" against Ms. Laidlaw if Mr. Rushing failed to "reduce[] his presence" in the library. *Id.* Ms. Byres-Richardson provided Ms. Laidlaw with a library policy stating: "When staff bring their children...or other family members are in the library for an extended period of time, it generally impacts the ability of the staff member or other staff present to accomplish jobs effectively." *Id.* at 6–7. She also asserted that Mr. Rushing's presence had caused staff members "to begin speaking negatively about Ms. Laidlaw." *Id.*

Ms. Laidlaw and Mr. Rushing reported the incidents to the library's human resources department, prompting the library to convene a meeting with Ms. Laidlaw, a human resources representative, City of Albuquerque officials, and Ms. Byres-Richardson. *Id.* at 8. During that meeting, the City's representatives admitted that Mr. Rushing's presence "did not violate the

2

2001 policy." *Id.* at 11.  They nonetheless asserted that he "violated an internal policy" that was not publicly posted.  *Id.*  They stated that Mr. Rushing was a "distraction" and posed a "'liability' issue from a 'safety viewpoint'" in the event he became violent at the library.  *Id.* at 11–12.  Ms. Byres-Richardson claimed that Mr. Rushing's "presence was 'unsettling' and made her and unnamed other employees 'feel like they were being watched.'"  *Id.* at 12–13.  The City's representatives stated that Mr. Rushing could visit the Taylor Ranch Branch only to pick Ms. Laidlaw up "15–20 minutes before the end of her shift" and otherwise directed him to use another branch.  *Id.* at 10.  Mr. Rushing "had no choice but to obey the illegal order for the remainder of Ms. Laidlaw's employment."  *Id.* at 14.

Mr. Rushing alleges that Defendants violated his First Amendment right to access a public library, his Fourteenth Amendment right to equal protection, and the New Mexico Human Rights Act by discriminating against him on the basis of spousal affiliation  *See* Doc. 1 at 14–17.  Defendants move to dismiss the complaint, arguing that Mr. Rushing has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See generally* Doc. 15.

## II.    *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if it creates a "reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court treats the allegations as true, but "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action" are not credited.  *Twombly*, 550 U.S. at 555.  Under Rule 15(a)(2), courts "should freely give leave when justice so requires."  The Court construes a pro se litigant's complaint liberally.  *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).  However, pro se

3

parties must still "follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### III.    Analysis

For the reasons below, Mr. Rushing's (A) First Amendment claim survives, (B) class-of-one Equal Protection claim is dismissed without prejudice, and (C) spousal discrimination claim under the NMHRA survives.

### A.    *Mr. Rushing's First Amendment claim survives.*

First, Mr. Rushing plausibly alleges that Defendants violated his First Amendment rights under 42 U.S.C. § 1983.  It is "well established that the" First Amendment "protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564 (1969).  That protection extends to access to public libraries, "the quintessential locus of the receipt of information." *Doe v. City of Albuquerque*, 2009 WL 10706998, at *4 (D.N.M.), *aff'd*, 667 F.3d 1111, 1119 (10th Cir. 2012).

Public libraries are also "a type of designated public forum." *Doe*, 667 F.3d at 1128.  In designated public forums, the government may impose only content-neutral time, place, and manner restrictions that "(a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Mr. Rushing plausibly alleges that Defendants interfered with his First Amendment right to access information.  He alleges that he regularly visited the Taylor Ranch Branch Library for "reading, writing," "research," and accessing the internet, and that Defendants barred him from accessing the library for "45 hours a week." *Id.* at 2–3. Accepting those allegations as true, Defendants prevented Mr. Rushing from accessing a public library for most of the week,

interfering with his First Amendment right to receive information.  *See Doe*, 2009 WL

10706998, at *4 (denying motion to dismiss where plaintiff alleged that a ban from public

libraries violated his First Amendment right to receive information).

Defendants' argument to the contrary is premature.  They claim that their restriction was

"narrowly tailored" because it prohibited Mr. Rushing from visiting one of many library

branches during specified hours.  Doc. 15 at 6.  Defendants raise legitimate operational concerns.

However, the Court need not address those concerns at this stage.  *See Doe*, 2009 WL 10706998,

at *4 (considering only whether the plaintiff plausibly alleged a restriction on his First

Amendment right to access the public library at the motion-to-dismiss stage).  Discovery will

allow the parties to develop the factual record regarding whether Defendants' asserted interest

was significant, whether the restriction on Mr. Rushing was narrowly tailored, and whether

requiring Mr. Rushing to use other branches left open adequate alternative channels for accessing

information.

### B.      Mr. Rushing's class-of-one claim is dismissed without prejudice.

Next, Mr. Rushing fails to plausibly allege a class-of-one claim under 42 U.S.C. § 1983.

Under the Equal Protection Clause, the government "shall not treat similarly situated persons

differently unless the dissimilar treatment is rationally related to a legitimate legislative

objective."  *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1152 (10th Cir. 1999).  Where, as here,

a plaintiff is not a member of a suspect class and does not allege the deprivation of a fundamental

right, he may pursue an equal protection claim under a "class-of-one" theory.  *Village of

Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Mr. Rushing concedes that the class-of-one

framework applies.  Doc. 1 at 16.

Class-of-one claims are generally disfavored. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004). When "looking only at one individual there is no way to know whether the alleged difference in treatment was" based on "legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors." *Id.* Therefore, a plaintiff "must first establish that others similarly situated in every material respect were treated differently," and "then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Kansas Penn Gaming v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). Accordingly, "[i]t is...imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Jennings*, 383 F.3d at 1214.

Mr. Rushing fails to allege facts meeting that demanding standard. He asserts that "[o]ther employees at the Taylor Ranch Branch routinely hosted family members and friends who would speak with staff, enter staff areas, and remain longer than a 'brief pickup,' yet none were ever barred from the Taylor Ranch Branch." Doc. 1 at 16. But these allegations are conclusory and lack details permitting a meaningful comparison—such as who those individuals were, how often they visited, how long they stayed, and whether they engaged in conduct like that attributed to Mr. Rushing. Without factual allegations showing that these individuals were similarly situated to Mr. Rushing in material respects yet treated differently, the claim fails. *See, e.g.*, *Penn Gaming*, 656 F.3d at 1216 (dismissing a class-of-one claim where the complaint failed to identify an adequate comparator); *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x 887, 896 (10th Cir. 2010) (same). Mr. Rushing may file an amended complaint attempting to remedy these pleading deficiencies.

### C.   Mr. Rushing's spousal discrimination claim survives.

Finally, Mr. Rushing has adequately pled a spousal discrimination claim under the NMHRA.  As an initial matter, "the exhaustion of administrative remedies is a prerequisite to suit under" the NMHRA.  *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 20.

Mr. Rushing's allegations concern access to a public library—a paradigmatic public accommodation under New Mexico law.  *See Johnson v. Bd. of Educ. for Albuquerque Pub. Schs.*, 2025-NMSC-014, ¶ 18 (recognizing that public libraries are traditional public accommodations).  The Court therefore liberally construes Mr. Rushing's pro se complaint as asserting a claim under § 28-1-7(F).  Under § 28-1-7(F), it is unlawful for a state entity, "in any public accommodation," to deny an individual its "services, facilities, accommodations or goods" because of a protected characteristic, including "spousal affiliation."  *See also Johnson*, 2025-NMSC-014, ¶ 11.

Courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA," but that reliance "should not be interpreted as an indication that" New Mexico courts "have adopted federal law."  *Ocana v. Am. Furniture*, 2004-NMSC-018, ¶ 23.  The NMHRA's public-accommodation provision is analogous to Title II of the Civil Rights Act of 1964, which guarantees individuals "the full and equal enjoyment of...any place of public accommodation" without discrimination.  42 U.S.C. § 2000a(a).  To establish a prima facie Title II public-accommodation discrimination claim, a plaintiff must show that he: (1) is a member of a protected class; (2) attempted to exercise his right to the full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons outside the protected class.  *See United States v.*

7

*Lansdowne Swim Club*, 894 F.2d 83, 88 (3d Cir. 1990); *Hornick v. Hoyes*, 708 F.2d 321, 325 n.8 (7th Cir. 1983).

As an initial matter, Mr. Rushing has satisfied the NMHRA's exhaustion requirement. He attaches an Order of Non-Determination from the Department of Workforce Solutions' Human Rights Bureau, *see* Doc. 1 at 31–32 ("Ex. E"), and filed this lawsuit less than 30 days later. That is sufficient. *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶¶ 14–15, 17; *see, e.g.*, *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1273 (D.N.M. 2011).

Next, accepting Mr. Rushing's allegations as true, the Complaint plausibly alleges that Defendants limited Plaintiff's access to a public accommodation because of his spousal relationship to a library employee. First, Mr. Rushing alleges he is a member of a protected class because he is married to Ms. Laidlaw, a library employee. Doc. 1 at 1–2. Second, he alleges that he attempted to exercise his right to use the Taylor Ranch Branch: he routinely visited the branch for reading, research, and work. *Id.* at 3–5. Next, he alleges that Defendants denied him the full benefits and enjoyment of the public library. Ms. Byres-Richardson directed Mr. Rushing to "limit" his presence during Ms. Laidlaw's working hours. *Id.* Library officials ultimately directed him to use the Taylor Ranch Branch only to pick up Ms. Laidlaw at the end of her shift and otherwise use a different branch. *Id.* at 14. Finally, Mr. Rushing alleges that Defendants treated him differently from other patrons because of his relationship to Ms. Laidlaw. Mr. Rushing alleges that he used the library like any ordinary patron—reading, researching, and working while complying with all posted policies—yet Defendants restricted his access anyway. *Id.* at 3–5. These allegations plausibly state a claim for discrimination under the NMHRA.

Defendants' argument to the contrary is premature. They contend that they restricted Mr. Rushing's access to the Taylor Ranch Branch because employees found his presence distracting

8

and he made them uncomfortable.  That contention goes to Defendants' potential nondiscriminatory, legitimate justification for their actions.  Courts evaluating NMHRA discrimination claims consider such justifications under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, typically at summary judgment.  *See Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 10.  For example, in *Goradia v. Hahn Co.*, 1991-NMSC-040, ¶ 18, the New Mexico Supreme Court affirmed summary judgment on discrimination claims after concluding that the defendants had legitimate business reasons for their actions.  Mr. Rushing's claim therefore survives at this stage.

## IV.   *Conclusion*

The Court grants in part and denies in part Defendants' motion to dismiss. Mr. Rushing's claims under the First Amendment and the New Mexico Human Rights Act survive. His class-of-one claim is dismissed with prejudice.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.